# Exhibit A

Recording Requested By/Return To:
JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203

This Instrument Prepared By:

JPMORGAN CHASE BANK, N.A.
** 3415 VISION DRIVE
COLUMBUS, OH 43219-6009

――――――――――― [Space Above This Line For Recording Data] ―――――――――――

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This modification adds the amount of $97,924.90 to the current principal balance of $381,526.64, and represents capitalized interest, fees, expenses, and other amounts due under the terms of the original Mortgage/Deed of Trust/Trust Deed. The new unpaid principal balance of the loan, as modified, is $479,451.54. The original principal balance of the loan on which mortgage/recording taxes were previously paid was $417,000.00.

Current principal balance now due and owing: $381,526.64
Taxable accrued interest: $97,924.90

Loan Number ▒▒▒▒▒▒

This Loan Modification Agreement ("Agreement"), 1ST day of FEBRUARY, 2017,
* between TAMMY AMIEL ("Borrower") whose address is 18 DENVER DR, NEW CITY, NEW YORK 10956 and
** JPMORGAN CHASE BANK, N.A. ("Lender") whose address is CHASE, 780 KANSAS, FLOOR 2, MONROE, LOUISIANA 71203-4774 amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), and Timely Payment Rewards Rider, if any, dated APRIL 29, 2008 and recorded in reference numbers of documents modified: RECORDED MAY 22, 2008 INSTRUMENT NO. 2008-00024177 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at:
LEGAL DESCRIPTION:
Section 34.5 Block 1 Lot 49

* 18 DENVER DR, NEW CITY, NEW YORK 10956
―――――――――――――――――――――――――――――――――――――――
(Property Address)

the real property described being set forth as follows:

LEGAL DESCRIPTION:

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 1 of 9 pages)

Loan Number ▮▮▮▮▮▮▮▮

Section 34.5 Block 1 Lot 49

COUNTY OF ROCKLAND AND STATE OF NEW YORK

THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF ROCKLAND, TOWN OF CLARKSTOWN AND STATE OF NEW YORK, DESCRIBED AS FOLLOWS: ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE TOWN OF CLARKSTOWN, COUNTY OF ROCKLAND AND STATE OF NEW YORK, KNOWN AND DESIGNATED AS LOT 9 IN BLOCK C ON A CERTAIN MAP ENTITLED 'SUBDIVISION PLAT, FOR HEIGHTS', FILED 12/04/70 IN THE ROCKLAND COUNTY CLERK'S OFFICE IN MAP BOOK 81 AT PAGE 24 AS MAP NO. 4090, SAID LOT BEING MORE PARTICULARLY BOUNDED AND DESCRIBED ACCORDING TO SAID MAP, AS FOLLOWS: BEGINNING AT THE POINT OF INTERSECTION OF THE DIVISION LINE RUNNING BETWEEN LOTS 8 AND 9, AS SHOWN ON SAID MAP, WITH THE WESTERLY LINE OF DENVER DRIVE; RUNNING THENCE NORTH 60 DEGREES 50 MINUTES 10 SECONDS WEST, 195.10 FEET; THENCE SOUTH 23 DEGREES 12 MINUTES 10 SECONDS WEST, 173 FEET; THENCE SOUTH 23 DEGREES 12 MINUTES 25 SECONDS WEST, 22.78 FEET TO THE POINT WHERE SAID LINE INTERSECTS THE DIVISION LINE RUNNING BETWEEN LOTS 9 AND 10 AS SHOWN ON SAID MAP; THENCE SOUTH 60 DEGREES 34 MINUTES 9 SECONDS EAST ALONG SAID DIVISION LINE 215.84 FEET TO THE WESTERLY SIDE OF DENVER DRIVE; THENCE NORTH 17 DEGREES 00 MINUTES 30 SECONDS EAST ALONG SAID DENVER DRIVE 140.70 FEET TO A POINT OF CURVATURE; THENCE CONTINUING ALONG THE WESTERLY SIDE OF DENVER DRIVE ON A CURVE TO THE RIGHT HAVING A RADIUS OF 1.650 FEET AN ARC LENGTH OF 59.30 FEET TO THE POINT OR PLACE OF BEGINNING. BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO TAMMY AMIEL BY JAE W. CHOI AND UL Y. CHOI IN A BARGAIN AND SALE DEED EXECUTED 7/30/2002 AND RECORDED 8/20/2002 IN INSTRUMENT NO. 2002-00049421 OF THE ROCKLAND COUNTY, NEW YORK LAND RECORDS.

Tax Parcel No: SEC 34.5 BLK 1 LOT 49
This Modification Agreement modifies the following document:

1. Mortgage dated 04-29-2008, recorded 05-22-2008, in Instrument No. 2008-00024177, of Section 34.5, Block 1, and Lot 49, in the original principal balance of $417,000.00 between TAMMY AMIEL and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR CAPITAL ONE HOME LOANS, LLC, OPERATING SUBSIDIARY OF A NATIONAL BANK upon which, a mortgage tax of $5,391.00 was paid.

a. Assignment dated 03-05-2013, recorded 03-11-2013, in Instrument No. 2013-00008793, from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CAPITAL ONE HOME LOANS, LLC, OPERATING SUBSIDIARY OF A NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS OR ASSIGNS.

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae    UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 2 of 9 pages)

Loan Number ▮▮▮▮▮

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of FEBRUARY 01, 2017, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $479,451.54 consisting of the unpaid amount(s) loaned to the Borrower by the Lender plus any interest and other amounts capitalized.

2. Any Unpaid Principal Balance, plus interest, will be paid to the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.500%, from JANUARY 01, 2017. Monthly payments of principal and interest of U.S. $1,857.35, will be due on the 1ST day of FEBRUARY, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.500% will remain in effect until the principal and interest are paid in full. If there is any amount remaining under the Note and Security instrument on JANUARY 01, 2057 (the "Maturity Date"), as amended by this Agreement, these amounts will be due in full on the Maturity Date.

3. The Borrower understands and agrees that:
   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, or by the United States Bankruptcy Code, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which the Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by the Lender.
   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (d) All costs and expenses incurred by the Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be added to the new principal balance and shall be secured by the Security Instrument, unless stipulated otherwise by the Lender.
   (e) The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by the Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (f) That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 3 of 9 pages)

Loan Number [redacted]

Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

4. If the Borrower previously received a Chapter 7 bankruptcy discharge but did not reaffirm under applicable law amounts due under the Note:

   (a) Notwithstanding anything to the contrary contained in this Agreement, the Borrower and the Lender acknowledge the effect of a discharge in bankruptcy that, if granted to the Borrower prior to the execution of this Agreement.
   (b) The Lender may not pursue the Borrower for personal liability. However, the Borrower acknowledges that the Lender retains certain rights, including but not limited to, the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.
   (c) The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default thereunder.
   (d) Nothing in this Agreement shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability.

5. The Borrower hereby absolutely and unconditionally assigns and transfer to the Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, the Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in the Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

   The Borrower hereby absolutely and unconditionally assigns and transfers to the Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. The Borrower authorizes the Lender or the Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or the Lender's agents. However, the Borrower shall receive the Rents until (i) the Lender has given the Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) the Lender has given notice to the tenant(s) that the Rents are to be paid to the Lender or the Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

   If the Lender gives notice of default to the Borrower: (i) all Rents received by the Borrower shall be held by the Borrower as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument; (ii) the Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) the Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to the Lender or the Lender's agents upon the Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by the Lender or the Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) the

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae  UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 4 of 9 pages)

Loan Number

Lender, the Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) the Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by the Lender for such purposes shall become indebtedness of the Borrower to the Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

The Borrower represents and warrants that the Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent the Lender from exercising its rights under this paragraph.

The Lender, or the Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to the Borrower. However, the Lender, or the Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

6. By this paragraph, the Lender is notifying the Borrower that any prior waiver by the Lender of the Borrower's obligation to pay to the Lender funds for any or all Escrow Items is hereby revoked, and the Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. If the original loan documents did not include standard provisions for escrow items, the Borrower will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by the Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to the Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that the Lender requires to be escrowed. These items are called "Escrow Items." The Borrower shall promptly furnish to the Lender all notices of amounts to be paid under this paragraph. The Borrower shall pay the Lender the Funds for Escrow Items unless the Lender waives the Borrower's obligation to pay the Funds for any or all Escrow Items. The Lender may waive the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, the Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by the Lender and, if the Lender requires, shall furnish to the Lender receipts evidencing such payment within such time period as the Lender may require. The Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 5 of 9 pages)

Loan Number ▮▮▮▮▮

Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If the Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and the Borrower fails to pay the amount due for an Escrow Item, the Lender may exercise its rights under the Loan Documents and this Agreement and then include this amount in the unpaid principal balance. The Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, such amounts, that are then required under this paragraph, will be added to the regular monthly payment.

The Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit the Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. The Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including the Lender, if the Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. The Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. The Lender shall not charge the Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless the Lender pays the Borrower interest on the Funds and applicable law permits the Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, the Lender shall not be required to pay the Borrower any interest or earnings on the Funds. The Lender and the Borrower can agree in writing, however, that interest shall be paid on the Funds. The Lender shall provide the Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender shall account to the Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the shortage shall be added to the amount due to the Lender in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, the Lender shall promptly refund to the Borrower any Funds held by the Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 6 of 9 pages)

Loan Number ███

## TO BE SIGNED BY BORROWER ONLY

BORROWER SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And TAMMY AMIEL, LOAN NUMBER ███ WITH A MODIFICATION EFFECTIVE DATE OF February 01, 2017

In Witness Whereof, the Borrower(s) have executed this agreement.

_____(signature)_____    Date: 2,5,17

Borrower - TAMMY AMIEL
(Must Be Signed Exactly as Printed)

State of NEW YORK           )
County of Rockland          )
Enter County Here           )

On the 5th day of February, in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared TAMMY AMIEL, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____(signature)_____
(Signature of person taking acknowledgment)

(Seal, if any)

Notary Public State of NYS
My Commission Expires: 11-7-2020

LINDA M TIRELLI
Notary Public, State of New York
Registration #01TI6350197
Qualified in Rockland County
Commission Expires Nov. 7, 2020

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae  UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43882
WF601

(page 7 of 9 pages)

Loan Number ▓▓▓▓

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And TAMMY AMIEL, LOAN NUMBER ▓▓▓▓ WITH A MODIFICATION EFFECTIVE DATE OF February 01, 2017

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _[signature]_

Printed Name:    Robert Starr
                 Vice President

Date: 7/10/2017

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae  UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 8 of 9 pages)

Loan Number ███

State MICHIGAN ss. :

On the __10__ day of __July__ in the year __2017__, before me, the undersigned, personally appeared __Robert Starr__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of OAKLAND in the State of MICHIGAN.

_(signature)_
(Signature of individual taking acknowledgment)
Printed Name: **Delana Reaves**

(Seal, if any)

**Notary Public**
(office of individual taking acknowledgment)

My Commission expires: DEC 17 2019

> DELANA REAVES
> Notary Public, State Of Michigan
> County of Macomb
> My Commission Expires Dec. 17, 2019
> Acting in the County of _Oakland_

JPMC MODIFIED LOAN MODIFICATION AGREEMENT — Single Family — Fannie Mae UNIFORM INSTRUMENT
ver. 01_10_2017_11_09_00

CR43862
WF501

(page 9 of 9 pages)